UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARWELL PICADO,<br>    Petitioner,<br><br>v.<br><br>PATRICIA HYDE, *Field Office Director*; TODD LYONS, *Acting Director U.S. Immigration and Customs Enforcement*; KRISTI NOEM, *Secretary of Homeland Security*; and MICHAEL NESSINGER, *Warden of the Donald W. Wyatt Detention Center*,<br>    Respondents. | No. 26-cv-065-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

    Marwell Picado is in the custody of Immigration Customs and Enforcement ("ICE") at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1. He brings this habeas petition under 28 U.S.C. § 2241, seeking immediate release from ICE detention. *Id.* at 8. Mr. Picado argues that the Immigration Judge ("IJ") who conducted his bond hearing failed to comport with due process requirements and erred as a matter of law when she denied his request for release on bond. *Id.* at 6-7. The Government objects to Mr. Picado's petition. ECF No. 4.

    For the reasons that follow, the Court GRANTS Mr. Picado's habeas petition and ORDERS his immediate release.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Picado is a native and citizen of Nicaragua. ECF No. 1 at 3. He entered the United States without inspection on or about April 3, 2022. *Id.* Upon entry, immigration officials detained Mr. Picado and placed him in removal proceedings. *Id.* He was subsequently released on humanitarian parole pending his immigration hearing. *Id.*

On the night of October 11, 2025, Sergeant Zachary Hubbard was on patrol in Lincoln, Rhode Island. *Id.*; ECF No. 1-8 at 37. While driving on the highway, Sergeant Hubbard allegedly observed Mr. Picado driving at 90 mph in a 55-mph zone. ECF No. 1-8 at 37. Mr. Picado then exited the highway, and Sergeant Hubbard followed him and initiated a traffic stop. *Id.* Officer Jonathan Karraz, who was in the area, assisted Sergeant Hubbard with the traffic stop. *Id.* Later, Mr. Picado was charged with reckless driving. *Id.* at 37, 40. The charges have not been adjudicated.

In response to the reckless driving charge, a hearing was scheduled in Rhode Island state court for November 3, 2025. ECF No. 1 at 4. However, Mr. Picado asserts that he never received notice of this hearing. *Id.* When he failed to appear at the hearing, the court issued a warrant for Mr. Picado's arrest. *Id.*

A week later, while on his way to traffic court for a different hearing, ICE officials encountered Mr. Picado and arrested him. *Id.* Mr. Picado was subsequently transferred to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. *Id.*

Mr. Picado later requested a bond hearing before an IJ. *Id.* A hearing was held in the Chelmsford Immigration Court on December 4, 2025, but the IJ concluded that she lacked jurisdiction to consider Mr. Picado's request for release on bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[1] *Id.*

Meanwhile, Mr. Picado filed a habeas petition with this Court, requesting that the Government provide him with a bond hearing. *Id.* Judge Mary S. McElroy of this Court granted Mr. Picado's petition and ordered that he be provided with a bond hearing under 8 U.S.C. § 1226(a). *Id.*; *see also Picado v. Hyde*, No. 25-cv-614-MSM-PAS, Text Order of Dec. 16, 2025 (granting Mr. Picado's petition).

Pursuant to Judge McElroy's order, the Government provided Mr. Picado with a bond hearing before the Chelmsford Immigration Court. *Id.*; ECF No. 4-1 at 2. Mr. Picado, through his attorney, presented several pieces of evidence, including the police report showing that he was arrested on allegations of reckless driving. ECF No. 1 at 4-5; *see also* ECF No. 1-8 at 34-42.

By contrast, the attorney representing the Department of Homeland Security ("DHS") did not submit any evidence. ECF No. 1 at 4; ECF No. 4-1 at 3. When the

---

[1] This decision by the BIA, which is binding on IJs, treats noncitizens who enter the United States without inspection or admission and who then reside in the country for several years thereafter as "applicants for admission," meaning they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). However, that decision is not binding on this Court, and this Court must instead "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

3

IJ asked the DHS attorney if he intended to submit any evidence or if there were any objections to Mr. Picado's proposed evidence, the following conversation[2] ensued:

> **DHS:** Uh, no, your Honor. I will just note that this bond hearing appeared on my docket for the first time this morning and so I haven't had a chance to get the police reports for the case. Um, but I can certainly argue the matter.
>
> **IJ:** Understood. Yeah, occasionally these get put on with very short notice as I'm sure you know. Alright … do you know, do you have an estimate as about how long it might take you to get those police reports?
>
> **DHS:** Um, I don't, literally I had prepared your docket for today. And then I came on about 20 minutes ago and I saw this there and, and I didn't know whether it was an asylum case because he also has a merits hearing and so I was preparing the merits hearing and, um, at the end of the day, who know? I don't know for sure, but it may be this afternoon. I could certainly have somebody work on it while we're doing our other business today.
>
> **IJ:** Alright. Let's get-- if that would work. Alright, let's get started this morning and I will make a determination later if that's gonna be necessary.

ECF No. 4-1 at 3.

The parties went on to devote a significant portion of the bond hearing to the police report. The DHS attorney argued that the report, which he was just seeing for the first time at the hearing, merited a finding that Mr. Picado posed a danger to the community. Conversely, counsel for Mr. Picado ("JRA") argued that DHS could not meet its burden of proving dangerousness.

> **IJ:** Alright. So I'd like to first hear argument from the department and department if you need a couple of minutes, I can give you that. Understood. You got this last minute on short notice.

---

[2] This conversation is taken from the bond hearing transcript, which the Government submitted pursuant to this Court's Text Order. *See* Text Order (Jan. 30, 2026). The Government acknowledges that this is "an unofficial transcript of the bond hearing prepared by the U.S. Attorney's Office." ECF No. 4 at 2 n.3.

**DHS:** Well, I can make the, the general argument. I'm looking at the BCR and the criminal record here and it appears that there was an arrest for reckless driving and drag racing, on October 11th of this year. You know, certainly that would, I believe cause a significant danger to the community. And so we would argue that [Mr. Picado], uh, would be a danger to the community and certainly a flight risk based upon the fact that, um, that he's been here such a short amount of time. And so for those reasons we would ask you that you deny bond.

**IJ:** Alright, thank you. And I do actually see some police-- Lincoln police reports that were filed by [Mr. Picado] related to that, uh, in the second exhibit. Alright, counsel for [Mr. Picado], I'll hear your argument please on danger and flight risk.

**JRA:** Thank you, your Honor. Your Honor, I don't believe the government can meet the burden of proof in this case. As you know, he's indicated they haven't submitted anything. But however, the only arrest that [Mr. Picado] has involves this reckless driving charge that he got, early October of this year. Um, I'm not sure where counsel gets the [drag] racing from.

\* \* \*

[Mr. Picado] refused that he was recklessly driving. He initially thought that he was stopped because of a broken light. [Mr. Picado's] not a dangerous individual. This is his first arrest. He has been in the United States, um, since 2023. He has lots of family members here in the United States, including a lawful permanent resident sister, uh, and US citizen, siblings. He also has a partner, your Honor, who is a US citizen. She submitted a written statement and her passport, um, that indicates that they have been dating since about a year ago.

They plan to marry, and through that, [Mr. Picado] will be able to obtain legal status as he was, uh, paroled in a 212 D 5, um, after being detained by DHS. So he would seek adjustment of status at some point, your Honor. He also has, um, that asylum application pending with this court. [Mr. Picado] is a very humble person. He's been working since he arrived in the United States. He's lived in Rhode Island since. Um, and if released, he will return to live with his spouse, and her daughters. And he will continue working. Um, and we'll be sure to appear every hearing, set before this court. Thank you, your Honor.

**IJ:** Thank you. Any final comments by the department? It's not required.

5

**DHS:** Well, well, I'm just looking at the police report and, and this is the first time I've seen it, but, uh, 90 miles an hour to 55 that he was clocked. I mean that's significantly over the speed limit that is a danger to the community, the kind of the very definition of that, and could have caused serious injuries.

* * *

Uh, but even, even with a-- even on the plain language of the police report, I think it's obvious that he is a danger to the community, your Honor.

**IJ:** Thank you. I just want everyone while I-- go ahead. Did someone wanna say?

**JRA:** Sorry. And I was just saying that, um, I don't believe the government can meet the burden of proof simply by pointing to, to a police report, um, where they haven't presented anybody to, to, um, corroborate those claims by the police officer, your Honor.

**IJ:** Alright, thank you. Alright, just a moment. The court's reviewing the record, I'm deliberating.

* * *

All right. The court has reviewed the record in its entirety. The court does find that [Mr. Picado] is a danger to the community by clear and convincing evidence based on the recent arrest. And the court does agree that the extremely excessive speed is a serious danger with the swerving and other driving issues. The court will note that there is some corroboration within the police report and that there was more than one police officer involved in the traffic stop. So I am gonna find he's a danger and denying bond.

ECF No. 4-1 at 3-5.

Even after the hearing, DHS did not submit any evidence in support of its position. Nevertheless, the IJ issued a short order in which she denied Mr. Picado's request to be released on bond. ECF No. 1-9 at 2. The basis for her denial was as follows: "[Mr. Picado] is a danger to the community by clear and convincing evidence."

*Id.* Though he reserved the right to appeal this decision to the Board of Immigration Appeals ("BIA"), it is unclear from the record whether Mr. Picado has appealed.[3]

The IJ then issued another order in which she found Mr. Picado removable to Nicaragua. ECF No. 1 at 5; ECF No. 1-10 at 1 (showing removal order). Mr. Picado has expressed an interest in appealing this decision to the BIA. ECF No. 1 at 5.

Mr. Picado filed this second petition for a writ of habeas corpus, seeking immediate release from ICE custody. *Id.* at 8. He argues that the IJ failed to comport with due process requirements and erred as a matter of law when she denied his request for release on bond. *Id.* at 6-8. The Government objects to Mr. Picado's petition, claiming that Mr. Picado has not exhausted his administrative remedies and that the IJ's determination was not an error of law. ECF No. 4 at 3-4.

## II. DISCUSSION

### A. Jurisdiction

Before reaching the merits of Mr. Picado's petition or the Government's exhaustion argument, the Court must first assure itself of its jurisdiction. Though neither of the parties have raised it, this Court is always "under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate." *Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993).

---

[3] The Government notes that, while there is no record that Mr. Picado appealed, "there is a backlog with the BIA for processing notices to appeal, so it is possible that [Mr. Picado] filed a notice to appeal that has not yet been processed." ECF No. 4 at 3 n.5.

7

Regarding bond determinations, this Court is mindful of the jurisdictional limits contained in 8 U.S.C. § 1226(e). Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

However, this provision of the INA only bars "review of the Attorney General's discretionary judgment." *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)). It does not preclude, however, "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

Here, Mr. Picado is not challenging the IJ's discretionary judgment. Rather, his challenge is constitutional in nature because he argues that the IJ failed to comport with due process requirements when she denied him release on bond. ECF No. 1 at 7-8. As this Court has stated previously, this is "precisely" the type of claim that belongs in federal court. *Garcia v. Hyde*, No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025).

Additionally, Mr. Picado argues that the IJ erred as a matter of law in determining that he poses a danger to the community. ECF No. 1 at 6-7. Section 1226(e) does not bar this type of claim either considering recent developments at the Supreme Court and in the Ninth Circuit. In 2024, the Supreme Court clarified the

8

boundaries of judicial review in immigration cases by differentiating between what constitutes an unreviewable "discretionary judgment" and what constitutes a reviewable "question of law." *See Wilkinson v. Garland*, 601 U.S. 209 (2024).[4] The Court made clear that "[t]he application of a statutory legal standard … to an established set of facts is a quintessential mixed question of law and fact." *Id.* at 212. Relying on an earlier case, the Court concluded that "mixed questions of law and fact" are reviewable as "questions of law." *Id.* at 225; *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020).

After this decision, the Supreme Court vacated an earlier Ninth Circuit ruling that found that, under Section 1226(e), a district court lacked jurisdiction to review an IJ's dangerousness determination because it was "discretionary" in nature. *See Martinez v. Clark*, 36 F.4th 1219, 1228 (9th Cir. 2022), *cert. granted, judgment vacated*, ⸺ U.S. ⸺, 144 S. Ct. 1339 (2024). The Supreme Court remanded this case "for further consideration in light of *Wilkinson v. Garland*, 601 U.S. 209 (2024)." *Martinez v. Clark*, ⸺ U.S. ⸺, 144 S. Ct. 1339 (2024) (mem.). On remand, the

---

[4] More specifically, *Wilkinson* concerned a noncitizen who asked a federal court of appeals to review a decision by an IJ (and the affirmance of that decision by the BIA) to deny his application for cancellation of removal, a form of immigration relief requiring the noncitizen to show that their removal would result in "exceptional and extremely unusual hardship" to a U.S. citizen or lawful permanent resident family member. 601 U.S. at 211-212 (citing 8 U.S.C. § 1229b(b)(1)(D)). The appeals court held that such a decision was "discretionary," and that it therefore lacked jurisdiction to review it. *Id.* at 216 (citing 8 U.S.C. § 1252(a)(2)(B)(i)).

The Supreme Court reversed, finding that the application of a legal standard to facts, such as whether the noncitizen met the "hardship" standard, is "inescapably, a mixed question of law and fact," which is reviewable as a "question of law." *Id.* at 221, 225; *see Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 228 (2020).

Ninth Circuit reasoned that, after *Wilkinson*, the determination over whether a noncitizen is "dangerous" for immigration-detention purposes is "a mixed question of law and fact and is reviewable as a 'question of law.'" *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024).

Accordingly, because the IJ's finding of dangerousness is a finding based on the application of a statutory legal standard to an established set of facts, it is not a "discretionary judgment" barred by Section 1226(e) and is also reviewable by this Court as a "question of law." *See Wilkinson*, 601 U.S. at 212, 225; *Martinez*, 124 F.4th at 779; *see also Mayancela Mayancela v. FCI Berlin, Warden*, Civ. No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *5 n.5 (D.N.H. Nov. 18, 2025).

### B. Exhaustion

The Government primarily argues that Mr. Picado should be required to exhaust his administrative remedies before pursuing habeas relief in this Court. ECF No. 4 at 3-6. Specifically, the Government contends that Mr. Picado must first appeal the IJ's denial of his request for release on bond to the BIA. *Id.* at 3-4.

The Court will not require exhaustion in this case. There is no statute that requires exhaustion under the present circumstances. *See Garcia*, 2025 WL 3466312, at *6. Instead, this case is governed by the "more permissive" common-law exhaustion standard. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021). Under this standard, the Court may find exhaustion to be unnecessary where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial

10

consideration of his claim." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (citing *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992)).

As this Court has found repeatedly, the loss of liberty endured by a noncitizen in ICE custody is a "severe form of irreparable injury." *Garcia*, 2025 WL 3466312, at *6 (quoting *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005); *Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025). This loss of liberty is further compounded due to the considerable amount of time—up to six months, in many cases—it takes for the BIA to decide bond appeals. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248-49 (W.D. Wash. 2025) ("According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded *200 days* in 2024." (emphasis added)).

This Court will not require Mr. Picado to sit in an ICE detention facility for six months while he awaits a BIA decision. Any exhaustion requirement is hereby waived, and the Court will proceed to the merits of Mr. Picado's petition.

### C. The Merits

#### 1. Standard of Review

As mentioned, in cases involving challenges to IJs' bond determinations, federal courts retain "habeas jurisdiction over constitutional claims or questions of law." *Hernandez*, 872 F.3d at 987. Importantly, the First Circuit has held that placing the burden on a noncitizen to prove at their bond hearings that they do not present a danger to the community or pose a flight risk is a violation of the Fifth

11

Amendment's Due Process Clause. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39, 41 (1st Cir. 2021). Instead, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* at 41.

Thus, to obtain habeas relief, the noncitizen must show that the IJ "failed to place the burden of proof on the Government" to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *Mayancela Mayancela*, 2025 WL 3215638, at *5 (citing *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019)). The noncitizen can make this showing either by: (1) demonstrating that the IJ erred because the evidence itself could not, as a matter of law, have supported the IJ's decision to deny bond; or (2) pointing to the IJ's opinion itself and showing that the IJ failed to apply the correct standard to the facts. *Garcia*, 2025 WL 3466312, at *7 (citing *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)).

### 2. Analysis

The Court is mindful of its obligation to afford a degree of deference to the IJ's findings of fact and weighing of evidence. *See Hechavarria*, 358 F. Supp. 3d at 240 (citing *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990)); *see also Diaz Ortiz*, 384 F. Supp. 3d at 144. However, as relevant here, an IJ's "dangerousness" determination is not one that is shielded entirely from judicial review. As the First Circuit has observed, "[m]erely stating the proper standard does not discharge the

obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025).

In Mr. Picado's case, the sole evidence relied on by the IJ in determining that he posed a danger to the community was the police report that listed Mr. Picado's arrest for reckless driving. ECF No. 4-1 at 5 ("The court does find that [Mr. Picado] is a danger to the community by clear and convincing evidence based on the recent arrest."). Notably, though the Government is required to prove dangerousness by clear and convincing evidence, *see Hernandez-Lara*, 10 F.4th at 41, the attorney representing DHS at the bond hearing did not submit any evidence, either before or after, in support of Mr. Picado's continued detention. The DHS attorney looked only to the police report that Mr. Picado himself supplied, a copy of which he had obtained just 20 minutes before the bond hearing started.[5] ECF No. 4-1 at 3.

In the context of bond determinations, this Court has previously held that an uncorroborated police report cannot, by itself, establish dangerousness as a matter of law. *See Alvarez Puerta v. Nessinger*, No. 25-cv-108-JJM-AEM, slip op. at 1 (D.R.I. June 17, 2025) (finding that an uncorroborated police report is not clear and convincing evidence sufficient for a finding of dangerousness); *Rosa Pineda v.*

---

[5] That the DHS attorney only skimmed the police report is evident given that he falsely told the IJ that Mr. Picado had been arrested on a charge of "drag racing" in addition to reckless driving. ECF No. 4-1 at 3-4 ("I'm looking at the BCR and the criminal record here and it appears that there was an arrest for reckless driving and drag racing…. You know, certainly that would, I believe cause a significant danger to the community."). Mr. Picado's attorney quickly pointed out that the "drag racing" accusation was baseless. *Id.* at 4 ("Um, I'm not sure where counsel gets the [drag] racing from.").

13

*Nessinger*, No. 25-cv-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025) ("[A]n uncorroborated police report cannot, alone, be 'clear and convincing evidence sufficient for a finding of dangerousness.'"); *cf. I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025) (finding that the Government could not meet its burden of showing "flight risk" by a "preponderance of the evidence" where the IJ relied only on a dismissed criminal charge and an unsubstantiated claim that the noncitizen had gang affiliations).

The First Circuit has held the same in the context of immigration hearings concerning adjustment of status. *See Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (holding that "the agency may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report") (quoting *In Re Arreguin De Rodriguez*, 21 I&N Dec. 38, 42 (BIA 1995)).

The Government attempts to distinguish *Alvarez Puerta* from this case, arguing that the underlying criminal charges had been dismissed in *Alvarez Puerta*, whereas Mr. Picado's reckless driving charge remains pending. ECF No. 4 at 6. However, this is a distinction without a difference. As the First Circuit has observed, that a noncitizen may have been arraigned or indicted on a criminal charge "adds no substance to the allegations" against him, and the Government's "reliance on the fact of the indictment … is simply additional reliance on the police report." *Rosa*, 114 F.4th at 21.

The IJ also noted that there was "some corroboration within the police report" because "there was more than one police officer involved in the traffic stop." ECF No.

14

4-1 at 5. But the reliance on the additional police officer is misplaced. A close review of the police report shows that only Sergeant Zachary Hubbard allegedly observed Mr. Picado driving 90 mph in a 55-mph zone. ECF No. 1-8 at 37. According to the report, the second police officer, Officer Jonathan Karraz, arrived on the scene only after Mr. Picado took an exit off the highway. *Id.* ("The black Dodge Charger turned right onto Sayles Hill Rd where I activated my emergency lights and conducted a traffic stop. Officer Karraz was in the area and assisted me with the traffic stop."). This means that Officer Karraz could not have corroborated the reckless driving charge because he did not witness the alleged offense occur.

The Court therefore finds that the Government did not meet its burden in proving that Mr. Picado posed a danger to the community. Without more, an uncorroborated police report is simply not clear and convincing evidence sufficient for a finding of dangerousness. *See Alvarez Puerta*, slip op. at 1; *Rosa Pineda*, 2025 WL 3267328, at *1; *Rosa*, 114 F.4th at 17. As such, the IJ erred because the evidence she relied on could not have, as a matter of law, supported her decision to deny Mr. Picado's bond request. *See Mayancela Mayancela*, 2025 WL 3215638, at *5; *Garcia*, 2025 WL 3466312, at *7; *Hechavarria*, 358 F. Supp. 3d at 240.

III.	CONCLUSION

For the reasons stated, the Court GRANTS Mr. Picado's Habeas Petition. ECF No. 1. By now, Mr. Picado has participated in two bond hearings that two separate judges have found to be deficient. It makes little sense to provide him with a third. Therefore, in the interest of justice, the Government is hereby ORDERED to <u>release Marwell Picado immediately</u> under reasonable conditions of supervision.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

February 9, 2025